IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No._____

DAVID PENDERY,

    Plaintiff,

v.

WHISPERING PINES METROPOLITAN DISTRICT #1,

    Defendant.

## COMPLAINT

"A special respect for individual liberty in the home has long been part of our culture and our law; that principle has special resonance when the government seeks to constrain a person's ability to *speak* there." *City v. Ladue v. Gilleo*, 512 U.S. 43, 58 (1994).

## <u>INTRODUCTION</u>

    1.    Plaintiff David Pendery wishes to fly a Pride flag on his property to show support for and solidarity with LGBTQ families like his.  He also wishes to post a sign in his yard with a message that encourages inclusivity and kindness.  The sign he owns and wishes to post states: "IN THIS HOUSE, WE BELIEVE BLACK LIVES MATTER, WOMEN'S RIGHTS ARE HUMAN RIGHTS, NO HUMAN IS ILLEGAL, SCIENCE IS REAL, LOVE IS LOVE, KINDNESS IS EVERYTHING" (the "We Believe sign").  Nevertheless, Whispering Pines

1

Metropolitan District #1 (the "Metro District"), an independent government entity and political subdivision of the State of Colorado, forbids him from flying this flag and posting this sign on his own property.

 

2.  The Metro District allows certain flags and signs, but prohibits others based on the message communicated by the sign or flag.  The flag and sign that Mr. Pendery wants to display are forbidden unless he obtains prior approval from the Metro District's Design Review Committee, which has unbridled discretion and no narrow, objective, or definite standards to guide its decisions to approve or deny flag or sign applications.  The Metro District's restrictions violate Mr. Pendery's right of free expression that is protected by the First Amendment and Article II, Section 10 of the Colorado Constitution.

3.  In this action, Plaintiff asks this Court for interim injunctive relief to stop the Metro District from infringing on his constitutional right to free speech on his own property.  Plaintiff also seeks a declaratory judgment, a permanent injunction, and nominal damages.

**JURISDICTION AND VENUE**

4.  This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff David Pendery is a resident of Whispering Pines Metropolitan District #1.

8. Defendant Whispering Pines Metropolitan District #1 (the "Metro District") is a political subdivision of the State of Colorado. The Metro District acts through its agents, including its Board of Directors, its Design Review Committee, and a private management company, the Teleos Management Group.

9. The acts and omissions of the Metro District described herein were and are carried out under color of state law.

## FACTUAL BACKGROUND

### The Metro District Background

10. The Whispering Pines neighborhood in which Mr. Pendery lives is a housing community composed of over 300 homes located in Arapahoe County, Colorado.

11. The community was built by developers that formed an independent government entity, called a "metropolitan district," in order to finance the housing project.

12. Metropolitan districts exist separately from cities or counties. They are independent units of government that are formed to finance, construct, and operate public improvements.

13. The authority for the formation of a metropolitan district is found in the Colorado Special District Act, Colo. Rev. Stat. § 32-1-101, *et seq.*

14. Under that statute, a metropolitan district is one type of "special district" that provides residents of an area with at least two of the following services: (a) Fire protection; (b) Mosquito control; (c) Parks and recreation; (d) Safety protection; (e) Sanitation; (f) Solid waste disposal facilities or collection and transportation of solid waste; (g) Street improvement; (h) Television relay and translation; (i) Transportation; (j) Water.  Colo. Rev. Stat. § 32-1-103(10).

15. Metropolitan districts, or "metro districts," have the authority to issue tax-exempt bonds to finance construction of public improvements.  The board of the metro district then has the authority to impose property taxes on residents as a mechanism to repay the bonds.

16. A metro district is a political subdivision of the state of Colorado.  The statute defines a "special district" as "any quasi-municipal corporation and *political subdivision* organized or acting pursuant to the provisions of this article."  Colo. Rev. Stat. § 32-1-103(20) (emphasis added).

17. A metro district's elections, management of the board, and requirements for transparency, accountability, and fiscal responsibility are governed by Colorado Special District Act, Colo. Rev. Stat. § 32-1-101, *et seq.*

18. Additionally, under the statute, in certain instances, the board of a metro district has the "power to furnish covenant enforcement and design review services" amongst residents in the district.  Colo. Rev. Stat. § 32-1-1004(8).

19. In a resolution adopted by the Whispering Pines Metro District's Board of Directors, the Metro District claims the authority to enforce the District's rules.

### The Metro District's Speech Restrictions

20. The restrictions on expression challenged in this case appear in a Metro District document titled "Design Guidelines." The word "guidelines" in the title is deceptive because the document's norms that apply to residents' expression on their own property are not merely advisory—they are mandatory. In the Metro District, the Design Guidelines carry the force of law.

21. If a resident violates the Design Guidelines, the Metro District can subject the resident to fines or other legal action that the Metro District "deem[s] necessary and appropriate to assure compliance." If a resident fails to pay the fines imposed, the Metro District can place a lien on the resident's home.

22. Rule 2.24 of the Design Guidelines is titled "Flags and Flagpoles." The rule distinguishes between flags that are automatically allowed and flags that are prohibited unless and until the resident obtains prior approval from the Metro District's Design Review Committee. The distinction is based on the content or symbolic message of the flag.

23. Flags that are automatically allowed, without prior approval, are: a United States flag of a certain size, a flag communicating that a resident served in the armed forces during a time of armed conflict, a Colorado flag of a certain size, a sports team flag during a sporting event, or a holiday flag during a certain time period.

24. All other flags, including Mr. Pendery's Pride flag, are prohibited unless and until prior approval is obtained from the Design Review Committee. There are no written guidelines

5

to ensure that the Metro District's decision to grant or deny approval is free from discrimination on the basis of the flag's communicative message.

25. The full text of Rule 2.24 states:

> The display of the American flag or of a service flag bearing a star or denoting the service of the Owner or occupant of the Lot, or a member of the Owner's or occupant's immediate family, in the active or reserve military service of the United States during a time of war or armed conflict, on a unit owner's property, in a window of the unit, or on a balcony of the unit is permitted provided the flag(s) do not exceed 5 square feet (pursuant to Section 106.5 of the Colorado Common Interest Ownership Act). Bracket holders are permitted without prior approval. One American flag and/or one Colorado flag are permitted to be displayed provided the flag(s) do not exceed 5' square feet. Approval is required for all other flags/banners. Sports teams' flags will be allowed during the duration of a single sporting event (not the entire sport season). Holiday flags will be allowed not more than 30 days prior to the holiday and must be removed within 15 days after the holiday. Flags must be kept/flown at all times in a neat and attractive condition.[1]

26. Rule 2.47 of the Design Guidelines is titled "Signs." The rule distinguishes between signs that are automatically allowed and signs that are prohibited unless and until the resident obtains prior approval from the Metro District's Design Review Committee. The distinction is based on the message of the sign.

27. Signs that are automatically allowed, without prior approval, are signs of a certain size providing notice that a particular property is for sale or lease. According to the Rule, any other signs are prohibited until and unless prior approval is obtained.

28. Rule 2.47 also discusses "political signs." The Rule provides no definition of "political signs." The District expressly states that "political signs" are approved only if the message of the sign relates to a political office or ballot issue that is contested in a pending

---

[1] Plaintiff does not challenge the final sentence of this Rule.

6

election and the sign is posted within a timeframe of 45 days before that election and 7 days after.

29. The full text of Rule 2.47 states:

> Approval is required for all signs with the following exception:
> • One sign advertising the home for sale or for lease, not to exceed 4' in height and 3' x 2' in dimension. Sign shall be removed within 1 week after closing/transfer of property.
>
> Any political signs are restricted to the following:
> • May not be displayed earlier than 45 days before election and 7 days after.
> • One sign per political office or ballot issue that is contested in a pending election.
> • May not exceed 36" x 48" in size.
> • Must remain within Owner's property lines.
> • Political signs may NOT be placed on any common area.

30. Pursuant to Rule 2.47, the Metro District prohibits Mr. Pendery from displaying the We Believe sign that he wants to post in his front yard. Mr. Pendery does not have advance approval from the Design Review Committee. There are no written guidelines to ensure that the Metro District's decision to grant or deny approval for Mr. Pendery's sign is free from discrimination on the basis of the sign's communicative message.

31. The Metro District's restrictions are impermissibly content-based in two ways. First, they allow certain flags and signs based on the communicative content of those flags and signs, but they prohibit other flags and signs, unless a resident obtains advance approval. For example, the Metro District allows residents to fly American flags and military service flags, Colorado flags, and sports and holiday flags during certain times, but residents are forbidden from flying all other flags unless they obtain advance approval. Similarly, the Metro District

allows residents to post signs with certain messages such as for sale or lease, but forbids residents from posting signs with other messages, unless they first obtain advance approval.

32. Second, for signs or flags that require advance approval, the Metro District fails to provide narrow, objective, and definite criteria to ensure that decisions are not influenced by the content or message of the proposed sign or flag.

33. Instead, the Metro District grants the Design Review Committee unbridled discretion over each application. According to the Design Guidelines, "[a]ll submissions are considered [by the Design Review Committee] based on their individual merit - approval or denial in one instance does not necessarily mean the same decision in a different submittal and/or set of circumstances."

34. The Metro District deems the Design Review Committee's approval or denial decisions conclusive and binding on all interested parties.

35. The Metro District does not set forth any avenue for review of the Design Review Committee's decisions.

36. Additionally, the Metro District allows the Design Review Committee to take 45 days after submittal of an application to approve or deny an application, since the Design Review Committee usually meets only once per month at irregular intervals. The Metro District considers an application to be denied if the response is pending or if no response is provided within 30 days.

37. The Metro District does not require the Design Review Committee to make decisions involving free expression sooner than the 45 days it usually has to make decisions after receiving applications.

Background on the Chilling of Mr. Pendery's Speech

38.     Plaintiff David Pendery, his husband, and their two young children moved to the Whispering Pines development in March 2020.

39.     They rent their home.

40.     Around the end of August 2020, Mr. Pendery displayed a Pride flag near the front door of his home.

41.     On August 31, 2020, Mr. Pendery received notice from the Metro District, by way of an email from the Teleos Management Group, stating that a Pride flag was being displayed at his residence in violation of the Metro District rules. The email said the management company had "no record that pre-approval was sought."

42.     The email cited Rule 2.24 of the Design Guidelines related to Flags and Flagpoles. It included the Rule's list of flags that are automatically allowed (such as American flags, military service flags, Colorado flags, sports team flags during sporting events, and holiday flags during certain time periods). The email highlighted the sentence in the Rule that states that "Approval is required for all other flags/banners."

43.     The email instructed Mr. Pendery that he needed to submit an application form for approval of his flag. The email stated that in his application, Mr. Pendery must "include the purpose/symbolism of the flag."

44.     The email stated Mr. Pendery could also "comment using the attached Response Form."

45.     On the same day he received that email, August 31, 2020, Mr. Pendery completed the "violation response form." He responded in part: "As an LGBTQ family living within the

Whispering Pines Metro District, we have elected to periodically display a Pride flag, with the full support of our neighbors, to show support and solidarity with families like ours, who face discrimination on a daily basis."

46. On September 8, 2020, Angela Elliot from the Teleos Management Group emailed Mr. Pendery. The subject line of her email was "Flag approval with conditions." She attached a document, which noted that Mr. Pendery's flag was approved only through December 31, 2020. It stated that Mr. Pendery "must resubmit application to fly beyond Dec. 31, 2020."

<u>The Chilling of Mr. Pendery's Expression at his Home</u>

47. Mr. Pendery's approval to fly a Pride flag expired on December 31, 2020.

48. Mr. Pendery wants to fly a Pride flag again.

49. He also wishes to post his We Believe sign to affirm values of diversity, inclusion, and kindness.

50. However, Mr. Pendery has refrained from flying his Pride flag and from posting his We Believe sign because he is forbidden from doing so without pre-approval. The Metro District maintains unfettered discretion over applications with no narrow, objective, and definite standards for whether, when, and for how long to grant such approval. Mr. Pendery has not sought approval, because he believes the Constitution protects him from the requirement that he submit his proposed expression to the whim of decisionmakers exercising such standardless discretion.

# FIRST CLAIM FOR RELIEF

*The Metro District's Flag and Sign Restrictions are Facially Unconstitutional Under the Free Speech Clause of the First Amendment*

51. Plaintiff incorporates the allegations in the foregoing paragraphs of this Complaint here.

52. The Metro District imposes facially unconstitutional content-based restrictions on speech. As content-based regulations on speech, the restrictions are subject to strict scrutiny.

53. The restrictions fail strict scrutiny. They are not narrowly tailored to further a compelling government interest.

54. Furthermore, the Metro District places unbridled discretion in the hands of the Design Review Committee to approve or reject applications for flags and signs. The Metro District does not provide any narrow, objective, and definite standards to confine the discretion of the Design Review Committee when it considers flag and sign applications. The Metro District thus has substantial power to engage in content-based and viewpoint-based censorship, and can also delay its review of an application or limit the duration of approval based on content or viewpoint.

55. The Metro District's restrictions on certain flags and signs, along with the Metro District's grant of unbridled discretion to the Design Review Committee as a final decisionmaker, creates an unconstitutional prior restraint that carries with it inherent danger of censorship and lacks any avenue for prompt judicial review.

56. The Metro District impermissibly infringes and threatens to continue to infringe on Plaintiff's rights to freedom of speech and freedom of expression.

11

57. Without justification, the Metro District is chilling peaceful expression that is squarely protected by the First Amendment.

58. By acting and threatening to act under color of state law to deprive Plaintiff of rights guaranteed by the Constitution of the United States, the Metro District has violated, and have threatened to continue violating, 42 U.S.C. §1983.

59. Wherefore, Plaintiff is entitled to interim injunctive relief, a declaratory judgment, nominal damages, and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF

*The Metro District's Flag and Sign Restrictions are Facially Unconstitutional Under article II, section 10 of the Colorado Constitution*

60. Plaintiff incorporates the allegations in the foregoing paragraphs of this Complaint here.

61. The Metro District imposes facially unconstitutional content-based restrictions on speech. As content-based regulations on speech, the restrictions are subject to strict scrutiny.

62. The restrictions fail strict scrutiny. They are not narrowly tailored to further a compelling government interest.

63. Furthermore, the Metro District places unbridled discretion in the hands of the Design Review Committee to approve or reject applications for flags and signs. The Metro District does not provide any narrow, objective, and definite standards to confine the discretion of the Design Review Committee when it considers flag and sign applications. The Metro District thus has substantial power to engage in content-based and viewpoint-based censorship,

and can also delay its review of an application or limit the duration of approval based on content or viewpoint.

64. The Metro District's restrictions on certain flags and signs, along with the Metro District's grant of unbridled discretion to the Design Review Committee as a final decisionmaker, creates an unconstitutional prior restraint that carries with it inherent danger of censorship and lacks any avenue for prompt judicial review.

65. The Metro District impermissibly infringes and threatens to continue to infringe on Plaintiff's rights to freedom of speech and freedom of expression.

66. Without any justification, the Metro District is chilling peaceful expression that is squarely protected by article II, section 10 of the Colorado Constitution.

67. Wherefore, Plaintiff is entitled to interim injunctive relief, a declaratory judgment, and permanent injunctive relief.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

1. Interim and permanent injunctive relief prohibiting Whispering Pines Metro District #1 from enforcing the challenged restrictions on flags and signs;
2. A declaratory judgment that the challenged restrictions violate the First Amendment and article II, section 10 of the Colorado Constitution;
3. Nominal damages under 42 U.S.C. § 1983;
4. An award of Plaintiff's costs and reasonable attorney's fees; and
5. Such additional relief as this Court may deem just.

Respectfully submitted this 23rd day of February 2021,

*s/ Mark Silverstein*
Mark Silverstein
Sara Neel
Arielle K. Herzberg
Asma Kadri Keeler
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 E. 17th Street #350
Denver, Colorado 80203
Phone: (720) 402-3104
msilverstein@aclu-co.org
sneel@aclu-co.org
aherzberg@aclu-co.org
akeeler@aclu-co.org

Desmonne Bennett
Adam Stern
BRYAN CAVE LEIGHTON PAISNER
1700 Lincoln St., Suite 4100
Denver, CO 80203-4541
Phone: (303)-866-0359
adam.stern@bclplaw.com

IN COOPERATION WITH THE AMERICAN CIVIL
LIBERTIES UNION FOUNDATION OF COLORADO

*Attorneys for Plaintiff*